**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Adrian Mosqueda, individually and doing business as Adrian's Restaurant,<br><br>Defendant. | No. CV-12-0523 PHX DGC<br><br>**ORDER** |

Plaintiff J & J Sports Productions Incorporated has filed a motion for summary judgment. Doc. 25. The motion is fully briefed. Docs. 26, 28. No party has requested oral argument. For the reasons set forth below, the Court will grant Plaintiff's motion in part and deny it in part.

**I.   Background.**

A boxing match titled *"The Event": The Manny Pacquiao v. Joshua Clottey WBO Welterweight Championship* ("the Program") was telecast nationwide on March 13, 2010. Doc. 25-1 ¶ 1; Doc. 26 at 2. Plaintiff owned the exclusive commercial distribution rights to the Program, including undercard events and all color commentary. Doc. 25-1 ¶ 2. Plaintiff's investigator Frank Balkcom, Sr., observed the Program being displayed at Adrian's Restaurant on March 13, 2010. *Id.* ¶ 7. Defendant did not pay a commercial licensing fee to Plaintiff to broadcast the Program (Doc. 25-1 ¶ 4; Doc. 26 at 2), and did not have permission from Plaintiff to broadcast the Program at Defendant's commercial establishment (Doc. 25-1 ¶ 5; Doc. 26 at 2).

**II.     Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment – the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Analysis.**

    **A.     Claims under 47 U.S.C. §§ 553 and 605.**

Plaintiff brings claims under 47 U.S.C. § 553 and § 605.  Section 605 prohibits the "unauthorized publication or use of communications."  The Ninth Circuit has clarified that communications protected by § 605(a) include satellite television signals.  *DirecTV v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).  Section 553 prohibits the unauthorized reception of cable service.  There is some disagreement as to the extent of the overlap between the two statutes, but the Court need not resolve the issue to decide this case.  *Kingvision Pay Per View, Ltd. v. Guzman*, No. CV-07-0963-PHX-PGR, 2008 WL 1924988, at *1 (D. Ariz. Apr. 30, 2008) ("The position taken by a majority of courts is that signals broadcast through the air via radio and satellite are generally within the purview of § 605, including programming transmitted via satellite to cable operators for their transmission to cable subscribers, and signals broadcast through a coaxial cable system are generally within the purview of § 553.").  Even where both sections are

applicable, damages typically are awarded only under § 605. *Id*; *see also Kingvision Pay-Per-View. Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000).

"[T]o be held liable for a violation of section 605, a defendant must be shown to have (1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by plaintiff." *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981); *see also DirecTV* 545 F.3d at 844 ("Section 605(a) of the Communications Act prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'").

In support of its motion for summary judgment, Plaintiff submits the affidavit of its president, Joseph M. Gagliardi. Doc. 25-5. Gagliardi asserts that Plaintiff purchased and retained the commercial exhibition licensing rights to the Program and thereafter sublicensed those rights to its commercial customers. *Id* ¶ 3. Gagliardi states that domestic commercial establishments who wished to broadcast the Program were required to pay Plaintiff a commercial sublicense fee based on the size of the establishment. *Id* ¶ 8. For an establishment with a capacity of less than 100 persons, like Adrian's Restaurant, the fee for the Program was $1,800. *Id*. (citing Doc. 25-5 at 18.). Gagliardi states that Defendant did not purchase a license to broadcast the Program. *Id*. Furthermore, according to Gagliardi, the nature of the broadcast is such that it could not be inadvertently intercepted by a commercial establishment. *Id*. ¶ 9

Plaintiff also submits the affidavit of private investigator Frank Balkcom, Sr., who states that he entered Adrian's Restaurant on the night the Program was telecast, March 13, 2010, at approximately 9:50 p.m. Doc. 25-4 at 4. Balkcom states that he observed the Pacquiao-Clottey fight (the Program's "main event") displayed on a television with approximately 80 persons inside the establishment. *Id*. At the time he entered the restaurant, Balkcom believed the fight to be in its third round. *Id*.

Plaintiff's evidence tends to show that Defendant (1) intercepted or aided the interception of the Program and (2) divulged or published, or aided the divulging or

publishing of the Program without Plaintiff's authorization. Although the evidence of interception is circumstantial, the Ninth Circuit has held that circumstantial evidence can be sufficient to support a factual finding, particularly in cases of signal piracy. *DirecTV, Inc.*, 545 F.3d at 844 ("The law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence may understandable be hard to come by.").

Defendant's only evidence is his own affidavit. Doc. 27 at 5-6. In the affidavit, Defendant states that he "does not recall" being present in his restaurant on March 13, 2010. *Id* at 5. He also states: "I believe that the boxing match at my Restaurant may have been tape delayed because I have no records of a purchase of this broadcast." He further states that the restaurant did not have cable service, but rather "Dish or Direct TV, but [he is] confident it was Dish TV." Id. at 6.

Speculative averments do not constitute facts for purposes of a summary judgment motion. *See Harris Tech. Sales, Inc. v. Eagles Test Sys., Inc.*, No. 06-02471-PHX-RCB, 2008 WL 343260, at *2 (D. Ariz. Feb. 5, 2008). Defendant's statement that he "believe[s]" the boxing match "may have been" shown on tape delay (Doc. 27 at 5) is speculative and therefore insufficient to raise a genuine issue of fact. Even if the broadcast was tape-delayed, however, "[a] tape-delayed broadcast without authorization is still a violation of the [Federal Communications Act]." *Nat'l Satellite Sports, Inc. v. Garcia*, No. Civ.A. 301CV1799D, 2003 WL 21448375 (N.D. Tex. June 18, 2003) (citations omitted).

Defendant's assertion that the restaurant received television service through a satellite rather than cable creates a genuine issue of fact on the § 553 claim because § 553 applies only to cable broadcasts. But, as Plaintiff concedes, even if both sections were applicable, damages would be awarded only under § 605. Doc. 25-1 at 10; *see Kingvision Pay-Per-View. Ltd.*, 102 F. Supp. 2d at 1197. Thus, the Court's inability to grant summary judgment for Plaintiff on the § 553 claim will not affect the ultimate

outcome of the case. Defendant's affidavit confirms the use of a satellite and the applicability of § 605. Accordingly, the Court will grant summary judgment, award damages under the §605 claim, and dismiss the § 553 claim as moot.

**B.     Conversion.**

"Conversion is any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein." *Scott v. Allstate Ins. Co.*, 553 P.2d 1221, 1225 (Ariz. Ct. App. 1976). It is not disputed that Plaintiff had exclusive commercial distribution rights over the Program and that a license for Adrian's Restaurant would have cost $1,800. Defendant has produced no evidence to refute that the Program was broadcast at Adrian's Restaurant without authorization. Accordingly, the Court grants summary judgment on the conversion claim. *See J & J Sports Productions., Inc. v. Vargas*, No. CV-11-02229-PHX-JAT, 2013 WL 1249206, at *3-4 (D. Ariz. Mar. 27, 2012) (holding that a similar showing was a conversion under Arizona law and awarding damages).

**C.     Damages.**

    **1.     Statutory Damages.**

Plaintiffs have elected to pursue statutory damages. Statutory damages are appropriate when actual damages cannot be easily proven. *J & J Sports Productions, Inc. v. Canedo,* No. C 09–01488 PJH, 2009 WL 4572740, *5 (N.D. Cal. 2009). "Under § 605(e)(3)(C)(i)(II), an aggrieved party may recover 'a sum not less than $1,000 or more than $10,000, as the court considers just' for each violation." *J & J Sports Productions Inc. v. Miramontes,* No. CV–10–02345–PHX–FJM, 2011 WL 892350, at * 2 (D. Ariz. March 14, 2011) (internal citation omitted). Further, "[a]n award of damages should deter future conduct but not destroy the business." *Id.* (quoting *Kingvision Pay–Per–View v. Lake Alice Bar,* 168 F.3d 347, 360 (9th Cir.2009)).

Courts consider a number of factors when awarding statutory damages. In a recent case with similar facts in this District, the court considered "the maximum capacity of the commercial establishment, the total number of patrons present at the time of the

1  unauthorized showing, and the amount defendant would have paid if it had purchased the
2  rights to show the broadcast." *Vargas*, 2013 WL 1249206 at * 3.

3  Plaintiff has presented evidence that the Program was broadcast on one television in a room with approximately 80 people. Doc. 25-4 at 4. Defendant stated in his deposition that the maximum capacity of his restaurant under the City of Phoenix Fire Marshall's order was 40 persons. Doc. 27 at 5. Even if the Court accepts Defendant's assertion as true, it does not refute Balkom's testimony, particularly because Defendant admitted that he "did not recall being present" at the restaurant on March 13, 2010. *Id*. Defendant has not created a genuine issue of fact with respect to the number of people in the restaurant.

In *Vargas*, the court awarded $4,000 dollars in statutory damages against an establishment that showed an intercepted broadcast on five televisions to between 125-130 patrons. *Vargas*, 2013 WL 1249206 at * 3. Here, the Program was broadcast on a single television and to a significantly smaller number of people. The Court finds that an award of $2,000 to be just under the circumstances.

### 2. Conversion Damages.

Plaintiff requests conversion damages in the amount of $1,800. Doc. 25-1 at 20. Under Arizona law, "the measure of conversion damages includes not only the value of the property taken, but also other damage suffered because of the wrongful detention or deprivation of property." *Collins v. First Fin. Servs., Inc.*, 815 P.2d 411, 413 (Ariz. Ct. App. 1991). Plaintiff has provided undisputed factual support for the claim that it charges a commercial sublicense fee of $1,800 for a business the size of Adrian's Restaurant. Doc. 25-5 at 3, 18; *see J & J Sports Productions, Inc., v. Diaz*, No. CV 11-02224-PHX-FJM, 2012 WL 1134904, at * 2 (D. Ariz. Apr. 4, 2012) (awarding only nominal damages where Plaintiff had failed to provide factual support for damages on a similar conversion claim). Accordingly, the Court awards damages in the amount of $1,800.00 for the conversion claim.

///

### 3. Enhanced Damages.

Section 605(e)(3)(C)(ii) provides that the Court may also award enhanced damages of up to $100,000 upon "a showing that defendant acted willfully and for the purpose of direct or indirect commercial advantage or private financial gain." *J & J Sports Productions Inc. v. Miramontes,* No. CV–10–02345–PHX–FJM, 2011 WL 892350, at * 2 (D. Ariz. Mar. 14, 2011). Relevant factors for courts to consider when awarding enhanced damages include: repeat violations, substantial unlawful monetary gains, significant actual damages, advertising, cover charges, or premium prices. *Id*. Additionally, some courts find "the mere unauthorized showing of a program sufficient to award enhanced damages because given the low probability of accidentally showing it, it must have been done willfully and for profit." *Id*. (quoting *Entertainment By J & J, Inc. v. Al-Waha Enter., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002)).

There is no evidence in this case of repeat violations, substantial unlawful monetary gains, advertising, cover charges, or premium prices. Moreover, the mere fact that the Program was shown at Defendant's restaurant does not foreclose the possibility that an employee or patron was primarily responsible for displaying the Program. A lack of evidence of the owner's personal involvement is irrelevant under § 605's strict liability scheme, but it is not irrelevant to the willfulness determination required for special damages. Furthermore, Defendant has since closed his restaurant and retired to take care of his sick wife, making specific deterrence less of a consideration. Doc. 27 at 5. Defendant is already liable for $1,800 in damages for conversion of the Program and an additional $2,000 in statutory damages. The Court finds the total amount of $3,800 sufficient to serve the purposes of the statute and provide general deterrence to potential infringers.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Doc. 25) is **granted in part and denied in part**. Summary judgment is granted with respect to all claims except the claim under § 553, which is **denied as moot**.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.** Defendant is ordered to pay $3,800 in damages.

**3.** Plaintiff shall submit a request for costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(V)(iii) and Local Rule 54.1 and 54.2 to the Court within 14 days.

Dated this 11th day of June, 2013.

*Daniel G. Campbell*
_____
David G. Campbell
United States District Judge